UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| GERRY MOORES and | ) | |
| LINDA MOORES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil No. 05-94-B-W |
| | ) | |
| SUNBEAM PRODUCTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs claim that a Sunbeam heating pad ignited an upholstered divan and caused a fire that burned down their house. Viewed in a light most favorable to the Plaintiffs, there is enough evidence the heating pad was defective to survive Defendant's motion for summary judgment.

### I.      Factual Background[1]

The Plaintiffs, Gerry and Linda Moores, sustained significant property damage to their real and personal property at their Lubec, Maine home as a result of a fire on April 21, 2003. *Def.'s Statement of Material Facts* at ¶ 1 (Docket # 17)(*DSMF*); *Pls.' Resp. to Def.'s Statement of Material Facts* at ¶ 1 (Docket # 19)(*PRDSMF*). The fire originated on the outer seating of the divan recliner ("the divan") in the living room. *PRDSMF* at ¶¶ 2-3. The evening of the fire, Mrs. Moores sat on the divan and used a Sunbeam heating pad. *DSMF* at ¶ 4.

---

[1] Consistent with the "conventional summary judgment praxis," the Court recounts the facts in a light most hospitable to Plaintiffs' theory of the case, consistent with record support. *Gillen v. Fallon Ambulance Serv.,* 283 F.3d 11, 17 (1st Cir. 2002). The Court has relied either on the uncontested facts or on Plaintiffs' version, if contested.

When she retired for the evening, Mrs. Moores left the heating pad on the seat cushion of the divan. *DSMF* at ¶ 6. The heating pad never sparked or smoked before, but Mrs. Moores occasionally experienced difficulty turning it off. *DSMF* at ¶ 5; *PRDSMF* at ¶ 5. She believes she turned the switch off before going to bed; however, she also believes it is possible she just changed the setting as the same control operates the temperature settings and the on and off switch. *PRDSMF* at ¶ 6. Around midnight, Mrs. Moores was awakened by the sound of a smoke detector and discovered the fire. *DSMF* at ¶ 7.

Mrs. Moores was a pack-a-day smoker. *DSMF* at ¶ 8. She usually smoked cigarettes only in the kitchen of her house – not in the living room where the divan was located. *DSMF* at ¶ 9. Although she has on occasion smoked a cigarette on the divan, the night of the fire, she did not have a cigarette while sitting there.[2] *DSMF* at ¶¶ 10, 12; *PRDSMF* at ¶¶ 10, 12. During the evening of the fire, she smoked five or six cigarettes, but each time, she left the living room and smoked in the kitchen. *DSMF* at ¶ 11.

Three experts evaluated the fire: Robert Long, a cause and origin expert; John C. Morse, a state fire investigator; and William K. Hurteau, a cause and origin expert. By process of elimination, Mr. Long determined there was only one source of ignition in the area of the surface of the seat cushion of the divan: the Sunbeam heating pad. *PRDSMF*

---

[2] The parties iterate and reiterate multiple facts about whether Mrs. Moores' cigarette smoking may or may not have been the source of the fire. However, once it is asserted and admitted that Mrs. Moores testified "she did not have a cigarette while sitting on the divan recliner on the evening of the fire", *DSMF* at ¶ 12; *PRDSMF* at ¶ 12, this Court is required to view the evidence in a light most favorable to her and assume she is telling the truth. The Court has ignored the parties' squabbles about whether ash trays or other physical evidence of smoking were absent from the living room, whether a cigarette could have ignited the divan without some form of insulation, whether the burn pattern is or is not consistent with cigarettes as the cause of the fire, whether Mrs. Moores told someone at some other time that she had smoked a cigarette on the divan, and whether that person told another person that Mrs. Moores had told him that she had smoked a cigarette on the divan. *See, e.g., DSMF* at ¶¶ 12-14, 20-22; *PRDSMF* at ¶¶ 12-13, 20; *PSSAMF* at ¶¶ 28-35. For purposes of this motion, the cigarette, as a potential cause of the fire, is snuffed.

at ¶¶ 14, 17.  After identifying the heating pad as the heat source, Mr. Long sent the remains of the pad to Steve Thomas, an electrical engineer, for inspection and analysis. *DSMF* at ¶ 17; *PRDSMF* at ¶ 17.  Little remained of the heating pad and what remained was insufficient even to place it on the divan in reconstructing the scene.  *Pls.' Suppl. Statement of Additional Material Facts* at ¶ 26 (Docket # 19)(*PSSAMF*).[3]  All that survived was a collection of fine wires, the remains of a power cord, and what appeared to be the control.  *PSSAMF* at ¶ 27.

Mr. Morse concluded that the fire originated on the divan in the living room as a result of overheating or malfunction of a heating pad device.  *DSMF* at ¶ 15.  He opined that the heating pad was definitely capable of igniting the fire, and believed the malfunction could have been a problem with resistance heating within the pad.[4] *PRDSMF* at ¶ 16.  There was nothing, however, about the physical condition of the remains of the heating pad that caused him to conclude it was the source of the fire.  *Id.* William K. Hurteau, a fire investigator retained by Sunbeam, agreed the origin of the fire was the seat cushion of the divan, and conceded the heating pad was a potential source. *DSMF* at ¶¶ 14, 18-19; *PRDSMF* at ¶¶ 18-19.  He agreed that if Mrs. Moores' testimony is accurate, the heating pad is the only source of ignition.  *PSSAMF* at ¶ 36.

The deadline for the plaintiff's disclosure of expert witnesses expired on January 4, 2006.  *DSMF* at ¶ 24.  Steve Thomas has not been identified as an opinion witness

---

[3] Throughout the reply statement of material facts, Defendant "denies" or "qualifies" Plaintiffs' proffered supplemental facts and then proposes substituted statements and record citations identical to Plaintiffs'. This is improper and wastes time.  This Court has treated these denials and qualifications as admissions. *See* Local Rule 56(f)("Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted")(emphasis supplied); Local Rule 56(d)(requiring denials or qualifications of an opposing party's additional facts to be supported by a record citation).
[4] Sunbeam asserted Inspector Morse "could not testify as to the failure mode of the heating pad." *DSMF* at ¶ 16.  But, this assertion was denied by the Plaintiffs. *PRDSMF* at ¶ 16.

concerning the cause of the fire.  *DSMF* at ¶ 23.  Mr. Long was the only witness

identified as a potential expert on the cause and origin of the fire.[5]  *Id.*; *PRDSMF* at ¶ 23.

His expertise does not extend past the identification of the heat source.  *PRDSMF* at ¶

23.[6]

## II.    Discussion

### a.  Sunbeam's Motion

After the close of discovery, Sunbeam moved for summary judgment, based on a

single issue:  "Sunbeam moves for summary judgment because the plaintiffs have

designated no opinion witness who is expected to testify that that (sic) the heating pad

was defective and caused the fire.  Therefore, a critical element of the plaintiffs'

Complaint cannot be proven."  *Def.'s Mot. for Summ. J.* at 1 (Docket # 16).

### b.  Standard of Review

Summary judgment will be granted if there is no genuine issue as to any material fact

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The First Circuit has defined "material" to mean "a contested fact has the potential to

change the outcome of the suit under the governing law if the dispute over it is resolved

favorably to the nonmovant."  *McCarthy v. Nw. Airlines, Inc.* 56 F.3d 313, 315 (1st Cir.

1995)(citation omitted).  It has defined "genuine" as "the evidence about the fact is such

---

[5] This statement illustrates one difference between summary judgment and trial.  Although the Plaintiffs admitted they had designated only Mr. Long as an expert, Sunbeam itself put Inspector Morse's testimony before the Court for purposes of the pending motion by citing his opinions in its statement of material facts.  To rule on the motion, this Court must accept Mr. Morse's opinions to the extent Plaintiffs have admitted them.  This Court expresses no view as to whether his testimony will be allowed at trial in view of what appears to be the Plaintiffs' choice not to designate him.

[6] Defendant attached to its Reply to Plaintiffs' Supplemental Statement of Additional Material Facts a "Supplemental Statement of Additional Material Facts in Support of Defendant's Reply."  (Docket # 21).  Such a supplement is not procedurally proper; the reply statement must consist of "a separate, short, and concise statement of material facts which shall be limited to any additional facts submitted by the opposing party."  Local Rule 56(d).  This Court will not consider the Defendant's additional facts, paragraphs 39 and 40 of the Reply filing.

4

that a reasonable jury could resolve the point in favor of the nonmoving party." *Id*. The

burden on the moving party may be discharged by demonstrating an absence of evidence

to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

(1986). The court is obligated to view the entire record "in the light most flattering to the

nonmovant" and indulge "all reasonable inferences in that party's favor." *Cadle Co. v.*

*Hayes*, 116 F.3d 957, 959 (1st Cir. 1997).

### c. Strict Liability

Plaintiffs assert a claim for strict liability under 14 M.R.S.A. § 221, based on the

following allegations:

24. That heating pads designed, manufactured, inspected, sold and distributed by Sunbeam would be used on occasion by residential homeowners was reasonably foreseeable to Sunbeam.
25. That Sunbeam had a duty to design and manufacture its heating pads so as to reasonably reduce the foreseeable harm that may occur in the event of a product defect within the heating pad itself.
26. The subject heating pad was sold in a defective condition that was unreasonably dangerous to Plaintiffs.
27. That the subject heating pad was expected to and did reach its owner, the Plaintiffs, before the fire without significant change in the condition in which it was sold.
28. That as a direct and proximate result of the defective condition, Plaintiffs sustained significant damage to their property, both real and personal, as set forth above.

*Compl.* at ¶¶ 24-28 (Docket # 1).

### i. Relevant Law

Maine's strict liability statute reads:

One who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods, or to his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold. This section

applies although the seller has exercised all possible care in the preparation and sale of his product and the user or consumer has not bought the product from or entered into any contractual relation with the seller.

14 M.R.S.A. § 221.

A product "can be in a defective condition, unreasonably dangerous to the user or consumer as a result of an error in the manufacturing or design process or the failure to warn of a product hazard." *Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 537 n.3 (Me. 1986). If proceeding under a defective design theory, "proof will involve an examination of the utility of the product's design, the risk of such design, and the feasibility of safer alternatives." *St. Germain v. Husqvarna Corp.*, 544 A.2d 1283, 1285 (Me. 1988)(citing *Stanley v. Schiavi Mobile Homes, Inc.*, 462 A.2d 1144, 1183 (Me. 1983)); *Violette v. Smith & Nephew Dyonics,* 62 F.3d 8, 12-13 (1st Cir. 1995). A product "though faultlessly made, may nevertheless be deemed 'defective' under [section 221] and subject the supplier thereof to strict liability if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning and no warning is given." *Lorfano v. Dura Stone Steps, Inc.*, 569 A.2d 195, 196 (Me. 1990)(citation omitted).[7] *See also Walker v. Gen. Elec. Co.,* 968 F.2d 116, 119 (1st Cir. 1992); *Elwell v. Conair, Inc.,* 145 F. Supp. 2d 79, 91 (D. Me. 2001).

The narrow issue is whether the Plaintiffs have produced sufficient evidence, absent direct proof of a specific defect, to survive summary judgment. Sunbeam concedes, probably wisely, that Maine law incorporates section 3 of the Restatement (Third) of Products Liability (1998):

---

[7] A manufacturer "has a responsibility to inform users and consumers of dangers about which he either knows or should know at the time the product is sold." *Lorfano,* 569 A.2d at 197 (quoting *Bernier,* 516 A.2d at 540). As a corollary to that rule, however, courts "have held that a manufacturer has no duty to warn of a danger that is obvious and apparent." *Lorfano,* 569 A.2d at 197.

> It may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff:
> (a) was of a kind that ordinarily occurs as a result of product defect; and
> (b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution.

*Id.* (*Restatement*).  *See Mem. in Support of Def.'s Mot. for Summ. J.* at 3-4 (Docket # 16)(*Def.'s Mem.*); *TNT Road Co. v. Sterling Truck Corp.*, No. 03-37-B-K, 2004 U.S. Dist. LEXIS 13461, *21 (D. Me. July 19, 2004)("…I am doubly inclined to conclude that the Law Court would adopt the Institute's statement of the rule.").  As Magistrate Judge Kravchuk pointed out in *TNT*, the commentary to section 3 of the Restatement provides that "when the product unit involved in the harm-causing incident is lost or destroyed in the accident, direct evidence of specific defect may not be available.  Under that circumstance, this Section may offer the plaintiff the only fair opportunity to recover." *Id.* at 20-21 (quoting *Restatement* § 3, cmt. b).  For purposes of this motion, based on Sunbeam's concession, Mr. and Mrs. Moores can survive summary judgment if they present "circumstantial evidence of malfunction and a lack of evidence of other causes." *McConchie v. Samsung Elecs. Am.,* No. 99-40-JD, 2000 U.S. Dist. LEXIS 12171, *6-*7 (D.N.H. Aug. 11, 2000)(reaching a similar conclusion with respect to a parallel New Hampshire statute).

### ii.  Application to the Facts of this Case

Sunbeam's first argument - that the Plaintiffs have not eliminated other potential causes – is hopeless.  *Def.'s Mem.* at 5 ("House fires have many potential causes, two of which have been identified in the circumstances of this case, a defective product and careless disposal of smoking materials.").  Summary judgment practice requires the Court to view the facts in a light most favorable to the Plaintiffs and, Mrs. Moores' testimony is

sufficient to negate the possibility that improper disposal of cigarettes caused the fire. Sunbeam has not suggested any other culprit and this Court is left with an upholstered chair and Sunbeam's heating pad.

Sunbeam's second argument is more substantive: that "Plaintiffs cannot meet their burden of proof as to any Count because they lack the requisite opinion testimony: no opinion witness is expected to testify that defendant's product was defective and caused the fire". *Def.'s Mem.* at 1. Sunbeam argues this incident was not of a kind that ordinarily occurs as a result of a product defect, and thus Plaintiffs cannot meet their burden under section 3 of the *Restatement*. This Court, however, does not reach the question Sunbeam seeks to generate: the exact quantum or quality of proof needed to withstand summary judgment absent proof of a specific product defect, the issue presaged in *Walker* and *TNT Road*. Here, Inspector Morse expressed an expert view that a problem with resistance heating within the heating pad caused the fire.[8] His opinion, however well founded, must be viewed in a light most favorable to the Plaintiffs.

Mrs. Moores' testimony isolating the heating pad, as opposed to cigarettes, as the sole source of ignition on the divan, Mr. Long's determination that the origin of the fire was the divan and his elimination of causes other than the heating pad, and Mr. Morse's opinion that a malfunction in resistance heating within the heating pad could have caused the fire, when combined and credited, generate genuine issues of material fact sufficient

---

[8] To rule on this motion, this Court assumes that as a state fire investigator, Mr. Morse has sufficient expertise to express such an opinion and views his testimony in a light most favorable to the Plaintiffs. Although there may be some contrary evidence, it was Sunbeam that proffered Mr. Morse's opinions in its statement of material fact. *DSMF* at ¶¶ 15, 16. Whatever questions remain about whether Inspector Morse may be called as an expert witness, *DSMF* at ¶ 23, the precision of his testimony about a specific defect, *DSMF* at ¶ 16, the depth of his investigation, *DSMF* at ¶ 16; *PRDSMF* ¶ 16, and the scope of his expertise, *DSMF* at ¶ 16, these are matters for trial.

to withstand summary judgment.  This Court DENIES Defendant's motion for summary

judgment on strict liability grounds.

### d.  Negligence

Plaintiffs claim negligence on the part of Defendant:

15.    Sunbeam owed a duty to Plaintiffs to carefully and properly design, manufacture, inspect, sell and distribute the heating pad in question.
16.    Sunbeam breached its duty to Plaintiffs by negligently, carelessly and improperly designing, manufacturing, inspecting, selling and distributing the heating pad and its component parts and failing to warn of the dangers, risks and defects associated with the heating pad and its component parts.
17.    As a direct and proximate result of Sunbeam's negligence, Plaintiffs suffered significant damage to their property, both real and personal, as set forth above.

*Compl.* at ¶¶ 15-17.  While Defendant's motion is largely focused on the strict liability

claim and applicable case law in Maine, Sunbeam asserts that "Plaintiffs cannot meet

their burden of proof <u>as to any Count</u> because they lack the requisite opinion testimony

[on product defect]".  *Def.'s Mem.* at 1 (emphasis supplied).  Therefore, Defendant's

argument regarding the lack of proof regarding the existence of a product defect extends

to the negligence count as well.

Such an extension is reasonable.  In *Stanley,* the Maine Law Court (Law Court) noted

that "negligence and strict liability theories overlap in that under both theories the

plaintiff must prove that the product was defectively designed thereby exposing the user

to an unreasonable risk of harm".  462 A.2d at 1148 (citation omitted).  As the theories

overlap, Defendant correctly implies that failure to meet the burden of one theory may

undermine Plaintiffs' ability to meet another.  However, the converse is true as well.[9]

---

[9] *See Mem. in Support of Pls.' Opp'n to Def.'s Mot. for Summ. J.* at 4 (Docket # 18)("Since the elements of Plaintiffs' various claims for strict liability, breach of warranty and negligence are all intimately related and often overlap, Plaintiffs can meet their burden of proof as to all three Counts…").

Because circumstantial evidence may establish a theory of strict liability, it may also establish a negligence claim.[10]   As with strict liability, Plaintiffs' failure to identify a specific defect is not necessarily fatal if they can negate other reasonable causes and, as they have done here, present circumstantial evidence of a defect.   They have produced sufficient evidence to meet their burden on this record to make out a negligence claim. *Gayer v. Bath Iron Works Corp.,* 687 A.2d 617, 621 (Me. 1996)(citing *Parker v. Harriman,* 516 A.2d 549, 550 (Me. 1986)); *Walker,* 968 F.2d at 120.

This Court DENIES Defendant's motion for summary judgment on negligence grounds.

### e. Breach of Warranty

Plaintiffs also assert claims of breach of express and implied warranty:

19.    Sunbeam impliedly warranted that the subject heating pad was physically fit for the purposes for which it was intended.
20.    Sunbeam expressly warranted that the heating pad was suitable for use by residential homeowners.
21.    Sunbeam breached its express and implied warranties by failing to design and manufacture the heating pad so it was devoid of any product defect that would render it unsafe for residential homeowners.
22.    As a direct and proximate result of Sunbeam's breach of warranties, Plaintiffs sustained significant damage to their property, both real and personal, as set forth above.

*Compl.* at ¶¶ 19-22.   Although there is no evidence in this record of any express or implied warranties, Sunbeam did not move for summary judgment on that basis, relying

---

[10] This is hardly controversial.  One manifestation is *res ipsa loquitur.*  As the Restatement (Second) of Torts § 328D (1965), adopted by the Law Court in *Ginn v. Penobscot Co.,* 334 A.2d 874 (Me. 1975), notes: "negligence and causation, like other facts, may of course be proved by circumstantial evidence…a *res ipsa loquitur* case is ordinarily <u>merely one kind of case of circumstantial evidence</u>, in which the jury may reasonably infer both negligence and causation from the occurrence of the event and the defendant's relation to it".  *Id.* at cmt. b (emphasis supplied).  *See also Poulin v. Aquaboggan Waterslide,* 567 A.2d 925, 926 (Me. 1989)(citing comment b and noting that *res ipsa loquitur* is "a <u>form</u> of circumstantial evidence that permits a jury to infer negligence and causation from the mere occurrence of an event")(emphasis supplied).

instead solely on its assertions that there is evidence of another causative agent, namely the cigarettes, and no evidence of a specific defect.  As to each issue, the analysis under breach of warranty claims is identical to the strict liability and negligence analysis and the result is the same.  *See Walker*, 968 F.2d at 119 (discussing strict liability and breach of implied warranty claims).

This Court DENIES Defendant's motion for summary judgment for breach of warranty.

### III.    Conclusion

Defendant's motion for summary judgment (Docket # 16) is DENIED.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of April, 2006

11